Kennita Lane Watson
(650) 204-1446, klwatsonmanagement@gmail.com
3790 El Camino Real #270, Palo Alto, CA 94306

**FILED**

JUN 26 2015

UNITED STATES BANKRUPTCY COURT
SAN FRANCISCO, CA

# UNITED STATES BANKRUPTCY COURT
## Northern District of California

*In re:*

    Idum W. Wiser

Debtor
and

    Kennita L. Watson

Movant / Landlord / Creditor

BK Case No. 15-30628 (Chapter 7)

RS No:

Hearing Date: Thurs, July 2nd, 2015 *(PROPOSED)*

Hearing Time: 1pm      *(PROPOSED)*

**HONORABLE HANNAH L. BLUMENSTIEL**

# EMERGENCY MOTION REQUIRING EXPEDITED DETERMINATION FOR ORDER
## REQUESTING ENFORCEMENT OF SHERIFF'S WRIT OF POSSESSION
### AND FOR RELIEF FROM STAY
### Under Rule 4001 & 11 U.S.C.A. § 362(a) & 365(d)(3)
*(Adapted from 6A West's Fed. Forms, Bankruptcy Courts § 9:178 (4th ed.))*

**To the Honorable** Hannah L. Blumenstiel, Bankruptcy Judge:

Kennita Lane Watson ("Movant"), a named Creditor, and a presumed Landlord of the Debtor
Idun William Wiser ("Debtor"), and sole, uncontested title holder of 835 San Pier Court,
Sunnyvale, CA, respectfully declares the following as true, and moves this court for an
emergency order:

a) requiring the Debtor's Chapter 7 trustee ("Trustee") to immediately relinquish any and all
    Debtor's presumed tenant rights, and to perform the obligations of the Debtor to the Movant
    under the Santa Clara County Sheriff's Writ of Possession of Real Property, included and
    described herein, and

b) granting the Movant/Landlord/Creditor Watson relief from stay to retake possession of such
    property and otherwise enforce its rights under certain orders of the Santa Clara County
    District Court and Sheriff's Office [Unlawful Detainer Case 115-CV-276975], (Exhibit 1-C)
    or

1

Case: 15-30628   Doc# 18   Filed: 06/26/15   Entered: 06/29/15 12:36:04   Page 1 of 25

c) should the court decline to grant relief from stay, setting a shortened deadline by which the Trustee must either assume or reject said possession.

d) Additionally, Movant/Creditor *begs* the court to grant this decision, or a hearing to make said decision, on an emergency/ex-parte basis, given the extreme and exigent circumstances of Movant, who is:

A: Severely disabled (with Secondary Progressive Multiple Sclerosis),

B: Living in a motel at great personal expense (and health risk, without handicap accommodations), while waiting to return to her home, at an entirely unpredictable future date,

C: After being fiscally devastated by the "financial caregiving" of Debtor (and his mother, Sheahan), she is facing further financial ruin by the legal fees and other costs associated with no fewer than seven civil actions involving the Debtor and/or his mother:

| | |
|---|---|
| San Mateo County Sup: | CIV532269 & CLJ211042; |
| Santa Clara County Sup: | 115-CV-276975, 1-15-CH-006097, & 1-15-CH-006098, and |
| Federal Bankruptcies: | 15-50651-AS (Sheahan) & 15-30628 (Wiser). |

D: Continued possession by the Debtor will cause substantial harm to the Movant, in that, the Debtor remains in possession of the premises without payment of monthly rent to the Movant, thereby denying the moving party adequate protection of her interest in the subject property, under the provisions of 11 U.S.C. Section 362(d)(1).

E: Movant has been and continues to be personally financially devastated by the Debtor's mismanagement, undue influence, embezzlement, conversion, financial abuse, and malfeasant violations of fiduciary and personal trust.

In support of its motion, the Landlord/Movant represents/declares as follows:

1. Debtor Wiser has never had (nor produced) any written lease or colorable tenant rights in the residential real property in question located at 835 San Pier Court, Sunnyvale, CA (hereinafter, "San Pier"). Additionally, the property is not necessary to an effective reorganization of the Debtor.

2. Movant Watson has not known Debtor Wiser to have any form of gainful employment in the last 20 years. Furthermore, Debtor admitted at June 16th 2015 Meeting of Creditors that he has filed NO state or federal taxes for at least 20 years. Given these admission, and the fact

Case: 15-30628   Doc# 18   Filed: 06/26/15   Entered: 06/29/15 12:36:04   Page 2 of 25

that Debtor has NEVER paid any rent, it is clear that there is NO likelihood that debtor can provide any assurance whatsoever that he will pay any rent now or ever. Per RE: Hawaii Pacific Package Store, Inc. (1980, BC DC Hawaii) 4 BR 502, and RE: Richards Pontiac, Inc., (1980) 6 BR 773) without assurance of adequate protection, the creditor will be granted relief where the Debtor offers no periodic payments, and offers no testimony to assure adequate protection.

3.  Debtor Wiser does not appear to currently reside or otherwise make use of San Pier. Additionally, it appears completely abandoned and uninhabited at this time.

4.  The San Pier premises appear to be abandoned, and not in any way occupied by the Debtor. Furthermore, San Pier has not been the residence of the Debtor for at least the last five months. Debtor, when queried by bankruptcy trustee Wirum, indicated another address (Fair Oaks) as his residence. Debtor does not receive mail at the San Pier. Debtor's mail now apparently goes to a PO Box in Menlo Park, per his Bankruptcy filings.

5.  According to the US Post Office, as of 3/27/15, Debtor (Idun William Wiser, AKA, Samuel Brooks) "Moved and left no forwarding address". This information was provided by the USPO per a formal pro-se legal request of Movant under section 265.6(d), 39 CFR 265, and CCP Section 116.340 document, titled "Request for change of address or boxholder information needed for service of legal process". This USPO legal FOI request was made after three months of failed restraining order service attempts had been made by the Sheriff's office, Movant's agents, and private service agents at San Pier. (See Exhibit 1-P).

6.  Other testimony supporting Debtor's lack of tenancy: According to court testimony on multiple occasions by Debtor's mother, Mary-Lou Sheahan, (hereinafter "Sheahan"), there are no other tenants or residents whatsoever at San Pier besides herself. Sheahan is also Debtor Wiser's Power of Attorney Agent, (according to verbal testimony of the Debtor to the Trustee at the 6/16/15 Meeting of the Creditors). The following are excerpts from Sheahan's first, permanent Elder Abuse Restraining Order Hearing, 1-15-CH-006098, (Sheahan is being restrained from Movant Watson) (Full Court Transcript attached as Exhibit 1-E):

    02-11-15, Watson V. Sheahan, Elder Abuse Restraining Order Hearing, 1-15-CH-006098

    (Page 8, lines 25-28, page 9, lines 1- 17, and page 10, lines 9-14)

    THE COURT: *(Judge Thomas E. Kuhnle, Santa Clara Sup Court, Probate, Speaking):*

MOVANT KENNITA LANE WATSON'S HEARING DECLARATION

Case: 15-30628    Doc# 18    Filed: 06/26/15    Entered: 06/29/15 12:36:04    Page 3 of 25

Page 8
25-26 THE COURT: Okay. So what I'm hearing is that you live at 735 (sic) (835) San Pier court, is that right?
27 MS. SHEAHAN: Yes. Not Ms. Watson.
28 THE COURT: And who owns that house?
Page 9
1-2 MS. SHEAHAN: To my understanding it is Kennita Watson.
3 THE COURT: And do you?
4 MS. SHEAHAN: It's in foreclosure.
<5-13 omitted>
14-15 THE COURT: Who else is currently living at that house?
16-17 MS. SHEAHAN: I'm the only person currently living at that house.
<omitted>
Page 10
9-13 THE COURT: Let me just get an understanding. So you're living on San Pier. You're the only person living there. And you agree Ms. Watson owns the property. And then the next step is you think you have a lease?
14 MS. SHEAHAN: I know I have a lease.

7. The Landlord/Creditor/Owner of San Pier is a disabled, dependent adult, who at best could only nominally be considered a "landlord" of the Debtor. Approximately a decade ago the Movant had a personal relationship with the Debtor (boyfriend). Debtor held himself out publically to be a caregiver of the Debtor while converting her assets to himself. The Debtor further held himself out to be an "Authorized Agent" of the Movant in publicly recorded documents, presumably under a Power of Attorney contract – although no POA contract has ever been produced by the Debtor. Tenant rights were assumed by the Debtor by an illegal squatting or subtenancy under Debtor's mother, Sheahan, who claimed tenancy (under a purported lease that she could not and did not produce, despite requests by the Probate court.)

8. Note that around the year 2009-2010, Debtor and his mother ("Sheahan"), forced Movant out of her own single family home and into an apartment, using the premise of home repair hazards to the disabled Movant/owner as the reason. Movant was never allowed to return to her home, was forced to live with three male personal friends of Debtor (none paying any rent), and was forced to pay approximately $30K total rent in those years. This despite Movant legally owning three homes, all managed by Debtor's mother, Sheahan, with Powers of Attorney. (One home was lost to foreclosure, unbeknownst to Movant, one was sold, and one is underwater after 6 years of being in nonstop foreclosure.)

9. Addition, in those years 2008-2015 of Debtor and Debtor's mother (Sheahan) management of Watson's affairs, Movant accrued mortgage interest, escrow arrears, and financial penalties

Case: 15-30628    Doc# 18    Filed: 06/26/15    Entered: 06/29/15 12:36:04    Page 4 of 25

and fees totaling $242,137.23 against her, (Exhibit 1-X) strictly from her San Pier mortgage holder, currently outstanding and presently being paid back. An additional amount of approximately $150K of other debt was obtained in Movant Watson's name and SS number, and has gone missing, with no measurable expenditures by, or benefits to, Movant Watson.

10. Prior to the commencement of the within proceedings on May 14, 2015 ("Petition Date"), the Debtor's mother Sheahan was in default in her obligations to the Movant under the lease, having failed to pay any rent whatsoever between the years of 2008-2015. The Debtor's unpaid fair market rent prepetition obligation (assuming $1K/year times five years of occupancy) to the Movant is at least $60,000. This does not include apparent extensive physical damage to the home caused by the Debtor and/or his illegal cotenants.

11. Prior to the Petition Date, the Movant successfully initiated an action in the Santa Clara District Court: Unlawful Detainer Case 115-CV-276975, ("Action"), seeking to recover possession of the Premises. The Debtor failed to respond to the Action. The Debtor being in default, the Santa Clara District Court on 5/25/15 issued a Writ of Possession ordering that the Movant should have possession of the Premises. A true and valid copy of the Writ of Possession is attached hereto as Exhibit 1-W.

12. No lease exists or was ever executed. Debtor was at best an illegal subtenant or squatter. Thus, his tenancy rights do not have substantial market value to the Trustee.

13. The Debtor has no equity in the San Pier premises or in any unwritten leases therein. Section 362(d) of the Bankruptcy Code requires the court to grant relief from the stay imposed by § 362(a) of said Code where (a) the Debtor has no equity in the property against which a party seeks to act and (b) such property is not necessary to an effective reorganization. Debtor has made neither claim, and it is asserted with great confidence by the Movant that neither circumstance could possibly apply in this case.

14. The Debtor has not filed bankruptcy in good faith under §362(c)(3) & (4). This bankruptcy filing is a sham filing by Debtor, designed to allow the continued conversion of Movant's assets and finances by Debtor. Debtor's filing in effect serves as the second serial filing by Debtor's mother and POA agent, Mary-Lou Sheahan, filed less than six months ago, in order to strategically delay multiple Unlawful Detainer and other inconvenient civil court deadlines faced by Debtor (and his mother, who can and should be considered the same as Debtor).

5

Case: 15-30628    Doc# 18    Filed: 06/26/15    Entered: 06/29/15 12:36:04    Page 5 of 25

15. Furthermore, there has not been a substantial change in the financial or personal affairs of the Debtor, and the Debtor refuses to timely file required petition or schedules.

16. The Trustee's inability to rescind the Debtor's presumed tenancy rights, due to Debtor's delay tactics, poses an extraordinary hardship to the Movant, who must meet her own obligations with respect to the financing of the building in which the Premises are located. Furthermore, the Movant, though severely physically handicapped by MS and requiring special disability accommodations, has had to personally endure no fewer than five moves in the last six months, and currently is living full time in a hotel at substantial daily expense, awaiting the right to return to her home. This hardship requires the expedited determination of this matter.

17. Movant, since 1/21/15, has had a Elder Abuse restraining order pending against the Debtor (1-15-CH-006097), and on June 3rd, 2015, had a permanent Elder Abuse restraining order awarded against Debtor's mother, Sheahan (1-15-CH-006098). This order will ultimately deny Debtor any tenancy or use rights of the Premises, further diminishing its value to the Trustee.

18. Furthermore, attached as Exhibit 1-R is a true and valid copy of a currently pending ex-parte motion by Movant's Elder Abuse attorney, Patrick Nakao, case No. 1-15-CH-006097: PETITON FOR CONTESTED EX PARTE HEARING ON ORDER TO TRANSFER POSSESSION OF FIREARMS, scheduled for Monday, June 29th, 2015.

In said Exhibit 1-R, attorney Nakao describes how Debtor misled the Movant, and Santa Clara Probate Judge Kuhnle into believing that he was going to immediately relinquish control of San Pier, and simultaneously relinquish control of firearms (as was required by law by his standing Temporary Restraining Order) by leaving them behind at San Pier for Movant to reclaim.

However, Debtor Wiser apparently masterfully used his bankruptcy filing to retain his tenancy at San Pier, by filing it on the exact day as his San Pier Unlawful Detainer judgment, and thus, using the bankruptcy court to Stay his eviction, he retain his illegal possession of firearms.

Note that in this Exhibit (1-R) there is a declaration describing how Debtor Wiser, when directly asked at his June 16th, 2015 Meeting of Creditors, whether he had or was giving up his tenancy rights to San Pier, he clearly indicated that he was not relinquishing his tenancy, answering: "I am still deciding that matter".

6

Case: 15-30628    Doc# 18    Filed: 06/26/15    Entered: 06/29/15 12:36:04    Page 6 of 25

Retaining his personal cache of firearms puts enormous fear and strain on both the Movant, as well as the seven abuse witnesses who filed sworn affidavits in support of Movant Watson's Elder Abuse R.O. hearing and will be appearing as witnesses in the upcoming R.O. trial.

19. The Movant herein begs an emergency order of this court granting the Movant relief from stay to pursue her rights as granted, including her right to immediate recovery of the Premises.

20. Movant asks the court to consider a financial judgment against Debtor in the form of fair market value back rent (since 2009), repair costs for illegal, unpermitted, unauthorized construction on the premises by the Debtor, and all legal cost incurred to regain possession.

21. Movant also moves in the alternative that, if the court declines to grant relief from stay, the court shorten to seven days the time within which the Trustee must assume or reject Debtor's tenancy rights and if assumed, immediately assume current and back fair market rent payments (as determined by the Trustee).

22. Movant asks the court to rely on Exhibits 1A & 1B for the Memorandum of Points and Authorities in Support of her Motion. These Exhibits are both Relief From Automatic Stay motions, filed against Sheahan (and "cocreditor" Wiser) in Sheahan bankruptcy 15-50651-AS.

Exhibit 1A is the pending Relief Motion by Landlord/Creditor Azad against Sheahan (re: Fair Oaks), by firm Terra Law. It chronicles both Sheahan's and Wiser's criminal abuse of the Bankruptcy court to further their financial exploitation of others.

Exhibit 1B is Movant Watson's Successful Relief Motion dated April 15, 2015 against Sheahan (for San Pier).

23. Movant particularly and respectfully begs the court to carefully consider the motion and Points & Authorities of Exhibit 1A, as the facts and legal circumstances are largely identical, and Movant is drafting this Motion pro se and under extreme financial and time duress:

Dated: June 26th, 2015                    Respectfully submitted,

                                          Signed: _____

Kennita Lane Watson
Movant, Landlord & Creditor, In Pro Se

MOVANT KENNITA LANE WATSON'S HEARING DECLARATION

Case: 15-30628    Doc# 18    Filed: 06/26/15    Entered: 06/29/15 12:36:04    Page 7 of 25

# EXHIBIT 1-A

Sheahan Bankruptcy Case 15-50651-ASW

(Unlawful Detainer Case CLJ211042)


Azad V Sheahan/Wiser Relief From Automatic
Stay Filings

Attorney McDaniel

# UNITED STATES BANKRUPTCY COURT
## Northern District of California

In re:                                          )     Bankruptcy No.: 15-50651 ASW
    Mary Lou Sheahan,                      )     R.S. No.:
                                          )     Hearing Date:  July 1, 2015
                                          )     Time: 2:30 p.m.
Debtor                                          )
_____ )

### Relief From Stay Cover Sheet

Instructions: Complete caption and Section A for all motions.  Complete Section B for mobile homes, motor vehicles, and personal property.  Complete Section C for real property.  Utilize Section C as necessary.  If moving party is not a secured creditor, briefly summarize the nature of the motion in Section D.

(A)    Date Petition Filed: February 27, 2015        Chapter:  13
        Prior hearings on this obligation:   N/A       Last Day to File §523/§727 Complaints:

(B)    Description of personal property collateral (e.g. 1983 Ford Taurus):    N/A

(C)    Description of real property collateral (e.g. Single family residence, Oakland, CA):    N/A

(D)    <u>Other pertinent information</u>:  The purpose of this Motion for Relief from Automatic Stay is to allow an unlawful detainer case to proceed against the debtor in unlawful detainer in the Superior Court of California, County of San Mateo, case no. CLJ211042.  A notice of automatic stay was filed in the unlawful detainer action on May 6, 2015.

        The debtor has admitted in this bankruptcy proceeding that she does not reside at the residential property owned by Mahmood Azad and commonly known as 4021 Fair Oaks Avenue, Menlo Park, California, 94025.  She has not paid any rent on the property since Mr. Azad purchased the property in January 2015, but has nonetheless filed a notice of automatic stay in the unlawful detainer.

        Creditor Mahmood Azad seeks a determination that the automatic stay does not apply to the unlawful detainer action because debtor has no legal or equitable interest in the property.  In the alternative, Mr. Azad seeks retroactive "in rem" relief from the stay or an order for adequate protection.

Dated:   June 15, 2015

                                              /s/ James A. McDaniel
                                             Signature

                                            James A. McDaniel
                                           Print or Type Name

                            Attorney for Creditor Mahmood Azad

Breck E. Milde (State Bar No. 122437)
bmilde@terralaw.com
Andrew J. Ditlevsen (State Bar No. 284911)
aditlevsen@terralaw.com
James A. McDaniel (State Bar No. 300041)
jmcdaniel@terralaw.com
TERRA LAW LLP
177 Park Avenue, Third Floor
San Jose, California 95113
Telephone: (408) 299-1200
Facsimile: (408) 998-4895

Attorneys for Creditor Mahmood Azad

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>MARY LOU SHEAHAN,<br><br>          Debtor. | Case No. 15-50651-ASW<br><br>Chapter 13<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY**<br><br>Date: July 1, 2015<br>Time: 2:30 p.m.<br>Place: 280 South First Street, Courtroom 3020<br>       San Jose, CA 95113<br>Judge: Hon. Arthur S. Weissbrodt |

4828-3828-4324, v. 1

# TABLE OF CONTENTS

I.  INTRODUCTION ......................................................................................................... 1

II.  FACTUAL AND PROCEDURAL BACKGROUND.................................................. 1

    A.  The Property................................................................................................ 1

    B.  The Unlawful Detainer and Debtor's Bankruptcy ...................................... 2

III.  ARGUMENT ................................................................................................................ 5

    A.  Relief From the Automatic Stay Should be Granted Because the
        Debtor has No Legal, Equitable, or Possessory Interest in the
        Property........................................................................................................ 5

    B.  Relief From the Automatic Stay Should be Granted Because the
        Petition was filed as Part of a Scheme to Delay, Hinder, or
        Defraud Creditors....................................................................................... 6

    C.  Relief From the Automatic Stay Should be Granted Due to the
        Lack of Adequate Protection of Azad's Interest in the Property ................ 8

    D.  Relief From the Automatic Stay Should be Granted for Cause
        Other Than Lack of Adequate Protection .................................................. 10

    E.  The Court Should Annul the Automatic Stay Because Mr. Azad
        Had a Good Faith Belief That Debtor had No Interest in the
        Property...................................................................................................... 11

IV.  CONCLUSION ......................................................................................................... 13

Case: 15-30628   Doc# 18   Filed: 06/26/15   Entered: 06/29/15 12:36:04   Page 11 of
25

# TABLE OF AUTHORITIES

**Cases**

*Alakozai v. Citizens Equity First Credit Union (In re Alakozai)*
  499 B.R. 698 (9th Cir. B.A.P. 2013)..................................................... 7

*Fadel v. DCB United LLC (In re Fadel)*
  492 B.R. 1 (9th Cir. B.A.P. 2013)........................................................ 5

*Fjeldsted v. Lien (In re Fjeldsted),*
  293 B.R. 12 (B.A.P. 9th Cir. 2003)............................................ 11, 12, 13

*In re Elmore,*
  94 B.R. 670 (C.D. Cal. 1988) ............................................................ 10

*In re Haw. Pac. Package Store, Inc.,*
  4 B.R. 502 (Bankr. D. Haw. 1980) ...................................................... 9

*In re Richards Pontiac, Inc.,*
  6 B.R. 773 (Bankr. E.D.N.Y. 1980) .................................................... 8

*In re Universal Life Church,*
  127 B.R. 453 (E.D. Cal. 1991) .......................................................... 10

*Knowles v. Robinson,*
  60 Cal.2d 620 (1963) ...................................................................... 10

*Mataya v. Kissinger (In re Kissinger),*
  72 F.3d 107 .................................................................................. 12

*Schwartz v. United States (In re Schwartz),*
  954 F.2d 569 (9th Cir. 1992) ............................................................ 11

**Statutes**

11 U.S.C. §361 ................................................................................ 8

11 U.S.C. §362 ................................................................. 5, 6, 7, 8, 10, 11

11 U.S.C. §541(a)(1)........................................................................ 5

**Rules**

Fed. R. Bankr. P. 4001(a)(3)............................................................... 8

**Treatises**

March, Ahart, & Sharpiro, Cal. Prac. Guide: Bankruptcy (The Rutter Group
  2014) ¶6:41 ................................................................................... 5

Case: 15-30628    Doc# 18    Filed: 06/26/15    Entered: 06/29/15 12:36:04    Page 12 of 25

1        Creditor Mahmood Azad, respectfully submits the following memorandum of points and

2    authorities in support of his Motion for Relief From Automatic Stay ("Motion").

3    **I.    INTRODUCTION**

4        Debtor has no legal, equitable, or possessory interest in the real property located at and

5    commonly known as 4021 Fair Oaks Avenue, Menlo Park, California, 94025 (the "Property").

6    Notwithstanding this fact, she has filed a notice of automatic stay in an unlawful detainer action

7    pending in state court and improperly frustrated Mr. Azad's ability to regain possession of the

8    Property.

9        Apparently, debtor also used her son, I. William Wiser ("Wiser"), to engage in a scheme to

10   delay or hinder the unlawful detainer by submitting multiple bankruptcy filings affecting the

11   Property.  (See, United States Bankruptcy Court, Northern District of California case no. 15-

12   30628.)  In two bankruptcies, the debtor and Wiser have each claimed to be the lessee with a 10-

13   year lease for the Property and identifying the other as the lessor.  Neither debtor nor Wiser have a

14   valid lease for the Property.

15       Debtor does not have an ownership interest in the Property and she has admitted in an

16   earlier proceeding in this bankruptcy that she does not reside at the Property.  There is no basis to

17   stay the Unlawful Detainer currently pending.  Mr. Azad seeks relief from the automatic stay to

18   regain possession of his Property which has been occupied by debtor's co-conspirators or others

19   residing at the Property under purported right proved by debtor or Wiser, all without any payment

20   of rent since January of this year.

21   **II.    FACTUAL AND PROCEDURAL BACKGROUND**

22       **A.    The Property**

23       Prior to December 22, 2015, Kennita Watson owned the Property in fee simple.

24   [Declaration of Mahmood Azad in Support of Motion for Relief From Automatic Stay ("Azad

25   Decl."), ¶ 2.]

26       On or about December 22, 2015, Ms. Watson sold the Property and transferred it by grant

27   deed to Mr. Azad.  [Azad Decl., ¶ 3.]  The grant deed was recorded in the official records of the

28   County of San Mateo Office of the Clerk Recorder, document no. 2015-001417.  [Azad Decl., ¶

4828-3828-4324, v. 1    1

1  3.] At the time, Mr. Azad was told that there was a person or persons occupying the property

2  illegally who would have to be evicted. [Azad Decl., ¶ 2.] The fact that Mr. Azad would bear the

3  burden of evicting the residents of the Property was part of the consideration for the sale of the

4  Property. [Azad Decl., ¶ 2.]

5       Mr. Azad visited the Property and it appeared to be occupied but it was unclear to him who

6  actually resided there. [Azad Decl., ¶ 4.] At the Property, Mr. Azad met debtor. She refused to

7  grant him access to the interior. [Azad Decl., ¶ 4.] Debtor has not provided Mr. Azad with

8  evidence of her interest in the Property or provided the Court or Trustee with information

9  sufficient to claim an interest protected by the automatic stay. [Azad Decl., ¶ 4.]

10      On or about January 24, 2015, Mr. Azad advised debtor that rent for the Property, a single

11  family residence in Menlo Park, was $6,000 per month. [Azad Decl., ¶ 5.] Debtor indicated to

12  Mr. Azad that she had no intention of ever paying that amount. [Azad Decl., ¶ 5.]

13      Thereafter, Mr. Azad made multiple attempts to visit and investigate the interior of the

14  Property. [Azad Decl., ¶ 5.] Eventually, Mr. Azad was granted access to the Property and

15  discovered that it had been converted into what can only be described as a tenement house. [Azad

16  Decl., ¶ 5.] Every room in the house, including living spaces and the garage, had been "rented" to

17  one or more people. [Azad Decl., ¶ 5.] Mr. Azad believes that debtor is collecting approximately

18  $600-$700 per month from each of the 8-10 persons currently residing at the Property. [Azad

19  Decl., ¶ 5.] Due to the fact that debtor is not paying rent to illegally occupy the Property, Mr.

20  Azad estimates that she is converting $6,000-$7,000 per month. [Azad Decl., ¶ 5.]

21      **B.    The Unlawful Detainer and Debtor's Bankruptcy**

22      On or about February 27, 2015, debtor filed her Voluntary Petition under Chapter 13 of

23  the Bankruptcy Code. [Declaration of James McDaniel in Support of Motion for Relief From

24  the Automatic Stay ("McDaniel Decl."), ¶ 2; see, Azad Decl., ¶ 6.] Debtor's filing was skeletal,

25  contained no substantive schedules, and did not list Mr. Azad as a creditor. [McDaniel Decl., ¶

26  2.] The filing did not list the Property as an asset of the estate. [McDaniel Decl., ¶ 2.]

27      Before filing any schedules, debtor proposed two Chapter 13 plans. On or about March

28  12, 2015, debtor filed her first proposed Chapter 13 plan. [McDaniel Decl. ¶ 3.] On or about

4828-3828-4324, v. 1                                    2

1    March 19, 2015, debtor sought a motion to extend time to file her schedules.  [McDaniel Decl.

2    ¶ 3.]  The motion was granted on or about March 20, 2015.  [McDaniel Decl. ¶ 3.]  Then, on or

3    about March 24, 2015, debtor filed an amended proposed Chapter 13 plan.  [McDaniel Decl. ¶

4    3.]  Neither plan identified any lease that would be retained or that any lease would be rejected.

5    [McDaniel Decl.¶ 3.]

6           On or about March 30, 2015, Ms. Watson filed a motion for order terminating stay to

7    pursue an unlawful detainer pending against the debtor in the Superior Court of California,

8    County of San Mateo, case no. 115CV276975, concerning a different parcel of real property.

9    [McDaniel Decl. ¶ 4.]  On or about April 10, 2015, debtor filed her Response to Motion for

10   Relief from Stay in which she represented that the "lease on [her] housing (835 San Pier Court)

11   runs through March 31, 2017."  [McDaniel Decl. ¶ 4, Exh. E ¶ 8.]  Debtor also represented, in

12   no uncertain terms, that:

13              Movant's attorney for this MFRS states clearly in his Notice for MFRS
                that the subject property is commercial real property.  Debtor wants the
14              record kept straight that at no time has this ever been commercial real
                estate property and that at all times this has been residential real estate
15              property.  [McDaniel Decl. ¶ 4, Exh. E ¶ 15.]

16

17          The hearing was held on or about April 15, 2015.  [McDaniel Decl., ¶ 5.]  On or about

18   April 16, 2015, full relief from the stay was granted including waiver of the 14 day stay.

19   [McDaniel Decl., ¶ 5, Exhibit F.]

20          Mr. Azad had not received any rent payments from debtor, or any other person, by mid-

21   April 2015.  [Azad Decl., ¶ 6.]  On or about April 22, 2015, Mr. Azad filed a complaint for

22   unlawful detainer in the Superior Court of California, County of San Mateo, case no.

23   CLJ211042 (the "Unlawful Detainer"), to eject debtor all of the unidentified residents of the

24   Property.  [Azad Decl., ¶ 6.]  The Unlawful Detainer only sought possession of the Property and

25   did not seek damages against debtor or any other person.  Mr. Azad did not believe the Property

26   was subject to debtor's bankruptcy.  [Azad Decl., ¶ 6.]  Specifically, he was not listed as a

27   creditor, he was not served with notice, and the Property was not listed as debtor's residence or

28   as an asset of the estate.  [Azad Decl., ¶ 6.]

On or about May 6, 2015, debtor filed a notice of stay of proceedings in the Unlawful Detainer. [Azad Decl., ¶ 7.] This was immediately before Mr. Azad was set to take debtor's default. Thereafter, Mr. Azad ceased all action in the Unlawful Detainer. [Azad Decl., ¶ 7.]

On or about May 6, 2015, debtor filed her Schedule I and Schedule J. [McDaniel Decl., ¶ 6.] Debtor's Schedule I lists her monthly income as $1,315.00. [McDaniel Decl., ¶ 6.] Debtor lists her monthly expenses as $1,254.00, including a $401.00 rent payment. [McDaniel Decl., ¶ 6.]

One month after the order granting relief from stay to Ms. Watson, on or about May 14, 2015. I. William Wiser ("Wiser"), filed his Voluntary Petition under Chapter 7 of the Bankruptcy Code, case no. 15-30628. [McDaniel Decl., ¶ 7.] Mr. Azad is informed and believes that Wiser is debtor's son. [Azad Decl., ¶ 4.] He lists the Property as his residence. Wiser has not filed schedules. [McDaniel Decl., ¶ 7.] He has, however, filed an Individual Debtor's Statement of Intention in which, under Part B for personal property subject to unexpired leases, he lists: "10 Year Administrative Lease On Menlo Park Home for Veterans Home." [McDaniel Decl., ¶ 7.] The lessor is identified as debtor, Mary Lou Sheahan. [McDaniel Decl., ¶ 7.]

On or about May 28, 2015, debtor filed additional schedules including Schedule A and Schedule G. [McDaniel Decl., ¶ 8.] Debtor did not list any ownership interest in real property in her Schedule A. [McDaniel Decl., ¶ 8.] In her Schedule G, debtor listed two items: 1) an "Administrative Lease for the administration of Vetrans [sic] Home Localted [sic] in Menlo Park," identifying I. William Wiser as the other party to the lease and 2) "835 San Pier Ct Sunnyvale, CA 94085 Lease on Rented Property good through March 31, 2017," identifying K.L Watson as the other party to the lease. [McDaniel Decl., ¶ 8.] Debtor did not list in her Schedule G any lease arrangement with Ms. Watson or Mr. Azad for the Property. [McDaniel Decl., ¶ 8.]

On or about May 29, 2015, Wiser filed what appears to be a motion for order extending time to file schedules, statements, and other necessary documents in his bankruptcy. [McDaniel Decl., ¶ 9.] While his motion and accompanying documents are not clear, it appears

4828-3828-4324, v. 1

4

1   that the basis for his motion is "to prevent an imminent removal from my residence; and the

2   residence that I and my family do charitable work for a Veterans Rehabilitation Home."

3   [McDaniel Decl., ¶ 9.] The motion was served on the Trustee for Wiser's bankruptcy by debtor.

4   [McDaniel Decl., ¶ 9.] The apparent purpose for this second bankruptcy filing by Wiser is to

5   further frustrate Mr. Azad's and Ms. Watson's separate unlawful detainers.

6   **III.**    **ARGUMENT**

7       **A.**    **Relief From the Automatic Stay Should be Granted Because the Debtor has No Legal, Equitable, or Possessory Interest in the Property**

8

9       The automatic stay applies broadly to prevent action against the property of the

10   bankruptcy estate and the debtor. 11 USCS § 362(a). The bankruptcy estate consists of "all

11   legal or equitable interests of the debtor in property as of the commencement of the case." 11

12   U.S.C. § 541(a)(1). The converse is also true. The bankruptcy estate does not include any

13   property in which the debtor has no equitable or legal interest. March, Ahart, & Sharpiro, Cal.

14   Prac. Guide: Bankruptcy (The Rutter Group 2014) ("Rutter Guide"), ¶6:41.

15       Bankruptcy courts "look to state property law to determine whether, and to what extent,

16   the debtor has any legal or equitable interests in property as of the commencement of the case."

17   *Fadel v. DCB United LLC (In re Fadel)*, 492 B.R. 1, 10 (9th Cir. B.A.P. 2013). Relief from the

18   automatic stay may be granted to allow proceedings against property to which the debtor has no

19   legal or equitable interest. *Id.* at 18 (affirming the grant of relief from stay to pursue an

20   unlawful detainer against a "tenant at sufferance claiming a possessory interest" in the

21   property).

22       Mr. Azad purchased the property in January 2014 from the former owner of the

23   Property, Ms. Watson. No lease was entered into between Mr. Azad and debtor. No lease

24   between Ms. Watson and debtor exists to the best of Mr. Azad's knowledge and belief and, in

25   any event, no such lease was disclosed as part of the purchase agreement for the Property.

26   [Azad Decl., ¶ 3.] The chain of title and title report shows that Ms. Watson owned the Property

27   in fee simple and transferred her entire interest to Mr. Azad. [Azad Decl., ¶ 2.]

28

1  Debtor has previously claimed a possessory interest in the Property but has since
2  represented in these bankruptcy proceedings that she resides at a different address.  In debtor's
3  opposition to Ms. Watson's motion for relief from stay, she claims that she resides at 835 San
4  Pier Court.  [McDaniel Decl. ¶ 4, Exh. E ¶ 8 ("[m]y lease on my housing (835 San Pier Court)
5  runs through March 31, 2017").

6  Debtor does not claim an interest in the Property in her schedules.  She lists no real
7  property in her Schedule A.  The only lease that she lists with Ms. Watson, the former owner of
8  the Property, is the one for 835 San Pier Court.  [See, McDaniel Decl., ¶7.]  She does not claim
9  to have a lease for the property with Ms. Watson or with Mr. Azad.  [Id.]  Wiser, whom she does
10 claim to have a lease with, is not and has never been an owner of the Property.

11 Mr. Azad brings the present motion out of respect for the authority of this Court.
12 Notwithstanding the fact that debtor has no legal, equitable, or possessory interest in the
13 Property, she has filed a notice of automatic stay in the state court unlawful detainer
14 proceeding.  The intent of this bankruptcy case, Wiser's bankruptcy case, and the Notice of stay
15 filed by debtor in the Unlawful Detainer is readily apparent.

16 Mr. Azad respectfully requests that the Court order that the automatic stay does not
17 affect the Unlawful Detainer due to the fact that debtor has no legal or equitable interest in the
18 Property and, based on her own representation to this Court, no possessory interest.

19 **B.**     **Relief From the Automatic Stay Should be Granted Because the**
           **Petition was filed as Part of a Scheme to Delay, Hinder, or Defraud**
20         **Creditors**

21 As further grounds for declaring that the automatic stay does not apply, or alternatively
22 as cause to grant relief from stay, this bankruptcy and her son's related bankruptcy appear to
23 serve no other purpose than to frustrate the actions of Mr. Azad and Ms. Watson and to
24 wrongfully retain substantial sums of money from third-party occupants.  11 U.S.C. § 362(d)(4)
25 provides grounds for relief from the automatic stay by terminating, annulling, modifying, or
26 conditioning such stay:

27         (4)  with respect to a stay of an act against real property under subsection
             (a), by a creditor whose claim is secured by an interest in such real
28

4828-3828-4324, v. 1                                    6

1   property, if the court finds that the filing of the petition was part of a
    scheme to delay, hinder, or defraud creditors that involved either--

2

3           …

4           (B) multiple bankruptcy filings affecting such real property.

5   This provision of the Bankruptcy Code addresses the issue of debtors resorting to filing

6   "tactical, serial bankruptcy cases" to frustrate creditors. *Alakozai v. Citizens Equity First Credit*

7   *Union (In re Alakozai)*, 499 B.R. 698, 702 (9th Cir. B.A.P. 2013). Under 11 U.S.C. § 362(d)(4),

8   the bankruptcy court may grant "in rem" relief from the automatic stay to the creditor to address

9   such schemes. *Id*. The successive filings do not all need to be made by the same creditor. *Id*.

10  at 702. In *In re Alakozai*, the order under 11 U.S.C. § 362(d)(4) was entered in the husband's

11  bankruptcy and had full effect to remove an unlawful detainer from the automatic stay initiated

12  by the wife's later bankruptcy. *Id*. at 705.

13          Debtor and Wiser have filed successive bankruptcies, each inconsistently claiming in

14  their schedules to be the lessee of a 10-year lease to which no current or prior owner of the

15  Property is a party. Debtor claimed in her Schedule G that she is the lessee under a 10-year

16  lease to which Wiser is the only other identified party. Wiser identifies what appears to be the

17  same 10-year lease, only Mary Lou Sheahan is listed as the Lessor.

18          Neither debtor nor Wiser have claimed an ownership interest in the Property nor can

19  they establish such an interest at any time. Debtor filed her Schedule A and listed no real

20  property. Wiser has not yet filed his Schedule A, but he claims only to be the lessee under a 10

21  year lease. In any event, Mr. Azad took title in fee from Ms. Watson who was, at the time, the

22  sole record title holder to the Property. [Azad Decl., ¶ 2.]

23          Debtor and Wiser, who have a familial relationship, appear to be playing a "shell game."

24  Each is claiming a long lease without claiming ownership of the Property and each claiming

25  that the other is the party who agreed to the lease, purportedly with the authority to do so. They

26  are engaging in this game to the great detriment of creditors and innocent purchasers for value

27  while greatly disrespecting this Court and the purpose underlying bankruptcy protection, i.e., to

28  give honest debtors a fresh start.

4828-3828-4324, v. 1

7

In rem relief is appropriate here because debtor and a member of her family have filed multiple bankruptcies with the apparent sole purpose to avoid valid evictions from properties owned or formerly owned by Ms. Watson. Debtor and Wiser have no ownership interest in the property and have concealed that fact in their filings with the Bankruptcy Court by claiming to be lessees under leases with each other. Moreover, Mr. Azad is aware of as many as eight other individuals who reside at the Property and who could potentially file bankruptcy to further frustrate the Unlawful Detainer.

Mr. Azad respectfully requests that the motion for relief from the automatic stay be granted pursuant to 11 U.S.C. § 362(d)(4) on the grounds that the petition is part of a scheme to delay, hinder, or defraud creditors that involved multiple bankruptcies affecting his Property. Due to the summary nature of the unlawful detainer proceeding Mr. Azad also respectfully requests that the court waive the 14-day waiting period provided in Fed. R. Bankr. P. 4001(a)(3).

**C.  Relief From the Automatic Stay Should be Granted Due to the Lack of Adequate Protection of Azad's Interest in the Property**

11 U.S.C. § 362 provides:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--
>
> > (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

The language of Section 362(d) is mandatory and "requires the court to grant relief from stay unless the plaintiffs are adequately protected." *In re Richards Pontiac, Inc.*, 6 B.R. 773, 777 (Bankr. E.D.N.Y. 1980). Adequate protection is defined, albeit not exclusively, in 11 U.S.C. § 361 as providing periodic cash payments, providing a lien, or granting other adequate relief. Other relief must "result in the realization by such entity of the indubitable equivalent of such entity's interest in such property," and may not be speculative, such as administrative expenses. 11 U.S.C. § 361; see, *In re Richards Pontiac, Inc.*, 6 B.R. at 777.

4828-3828-4324, v. 1

8

In the context of a lease, adequate protection does not exist unless the debtor offers periodic payments, a lien to secure the creditor's interest, or other testimony assuring the creditor the equivalent of the creditor's interest in the property. *In re Haw. Pac. Package Store, Inc.*, 4 B.R. 502, 505 (Bankr. D. Haw. 1980).

Assuming for the sake of argument that debtor has the right to possess the Property, the Court must grant relief from the automatic stay if debtor is unable or unwilling to provide adequate protection for Mr. Azad's interest in the property. Without adequate protection, Mr. Azad will suffer continuing harm in the amount of the fair market rental rate of the Property each month. Mr. Azad is informed and believes, based on internet resources and comparable neighboring properties, that fair market value for the Property is approximately $6,000 per month. [Azad Decl., ¶ 5.]

Debtor has made no assurances of adequate protection. Debtor has proposed two plans in this bankruptcy. Neither plan has indicated that debtor will assume the lease and make adequate protection payments or reject the lease and surrender the Property.

Debtor's bankruptcy schedules demonstrate that she is not capable of making adequate protection payments sufficient and necessary to protect Mr. Azad's interest in the Property. Debtor has been informed that the fair market value of rent for the property is $6,000. [Azad Decl., ¶ 5]. Debtor's Schedule I discloses that her total monthly income is $1,315 from Social Security. Debtor's Schedule J shows that her monthly expenses are $1,254. On the basis of her disclosures, there is no possibility that debtor could pay the fair market rental value of the Property.

Mr. Azad believes that debtor is actually converting as much as $6,000-$7,000 per month. Debtor has not claimed this amount as income. In any event, Mr. Azad would be hesitant to accept adequate protection payments from an unlawful source. If debtor cannot make the payments from her declared, legal sources, it is proper to grant relief from the automatic stay to allow Mr. Azad to pursue his state court remedies.

Mr. Azad requests that his interest in the Property be adequately protected during the pendency of debtor's bankruptcy by the payment of fair market rental value. If no adequate

1  protection can be provided then Mr. Azad requests that the Court grant relief from stay to

2  pursue his state court remedies including an action for unlawful detainer and a subsequent writ

3  of execution.

4          **D.      Relief From the Automatic Stay Should be Granted for Cause Other**
                     **Than Lack of Adequate Protection**
5

6          The Court shall grant relief from the automatic stay "for cause, including lack of

7  adequate protection of an interest in property." 11 U.S.C. § 362(d)(1). "Cause" is not limited

8  to "lack of adequate protection" because the term "including" is not exclusive. *See In re*

9  *Elmore*, 94 B.R. 670, 678 (C.D. Cal. 1988).

10         Cause exists to terminate or modify the stay to allow a pending litigation in a non-

11  bankruptcy forum to continue to completion. *In re Universal Life Church*, 127 B.R. 453, 455

12  (E.D. Cal. 1991) (addressing a bankruptcy filed to avoid an unfavorable ruling in tax court).

13  Cause to grant relief from the automatic stay also exists where the debtor impermissibly uses

14  the Bankruptcy Code to avoid the jurisdiction of another court. *See In re Sherman*, 491 F.3d

15  948, 971 (9th Cir. 2007). In California, unlawful detainers are intended to be summary

16  proceedings that allow the owner to expeditiously secure possession of premises which had

17  been wrongfully withheld. *Knowles v. Robinson*, 60 Cal.2d 620, 625 (1963).

18         This bankruptcy was filed the shortly after Mr. Azad took ownership of the Property,

19  undoubtedly with the intention to drag out the length of time debtor could take advantage of Ms.

20  Watson's properties. Debtor is abusing the bankruptcy process. Rather than seeking a good faith

21  discharge of accumulated debt, debtor is using this forum to prolong her use of Ms. Watson's and

22  now Mr. Azad's Property. Allowing debtor to profit under these circumstances and for the

23  duration of the bankruptcy would be an undue burden on Mr. Azad and an unjust and unwarranted

24  benefit to debtor.

25         Mr. Azad respectfully request relief from the stay to allow him to continue the unlawful

26  detainer action in the state court, to obtain judgment to remove any and all occupants from the

27  Property

28

**E.    The Court Should Annul the Automatic Stay Because Mr. Azad Had a Good Faith Belief That Debtor had No Interest in the Property**

11 U.S.C. §362(d) provides that the court can "annul" the stay after notice and hearing as a form of relief from stay and make an order for relief from the stay that is retroactive.  See, *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 573 (9th Cir. 1992).  The Ninth Circuit has held that the Bankruptcy Court has "wide latitude in crafting relief from the automatic stay, including the power to grant retroactive relief from the stay." *Fjeldsted v. Lien (In re Fjeldsted)*, 293 B.R. 12, 20 (9th Cir. BAP 2003)

Under Ninth Circuit law, courts are to engage in a case by case analysis and "balance the equities" to determine whether to retroactively annul the automatic stay.

> Many courts have focused on two factors in determining whether cause exists to grant relief from the stay: (1) whether the creditor was aware of the bankruptcy petition; and (2) whether the debtor engaged in unreasonable or inequitable conduct, or prejudice would result to the creditor.
>
> …However, we have never held these two factors to be dispositive, instead, we have engaged in a case by case analysis. Thus, this court, similar to others, balances the equities in order to determine whether retroactive annulment is justified.

*National Envtl. Waste Corp.*, 129 F. 3d at 1055 (citations omitted).  "Postpetition actions taken in violation of the automatic stay, even those undertaken by an actor with knowledge of the bankruptcy filing, may be validated by annulment of the stay." *Williams v. Levi (In re Williams)*, 323 B.R. 691, 699-700 (9th Cir. BAP 2005).

The Ninth Circuit Bankruptcy Appellate Panel has suggested that the following factors be considered when deciding whether to annul the stay: (1) number of bankruptcy filings; (2) whether, in a repeat filing case, the circumstances indicate an intention to delay and hinder creditors; (3) a weighing of the extent of prejudice to creditors or third parties if the stay relief is not made retroactive; (4) the debtor's overall good faith (totality of circumstances test); (5) whether creditors knew of stay but nonetheless took action; (6) whether the debtor has complied, and is otherwise complying, with the Bankruptcy Code and Rules; (7) the relative ease of restoring parties to the *status quo ante*; (8) the costs of annulment to debtors and creditors; (9) how quickly creditors moved for annulment, or how quickly debtors moved to set aside the sale or

4828-3828-4324, v. 1

11

1   violative conduct; (10) whether, after learning of the bankruptcy, creditors proceeded to take steps

2   in continued violation of the stay, or whether they moved expeditiously to gain relief; (11)

3   whether annulment of the stay will cause irreparable injury to the debtor; and (12) whether stay

4   relief will promote judicial economy or other efficiencies. *Fjeldsted*, 293 B.R. at 25; *Williams*,

5   323 B.R. at 700.

6       The foregoing items, however, are merely a framework for analysis and, in any given case,

7   one factor may so outweigh the others as to be dispositive. *Fjeldsted*, 293 B.R. at 25; *Williams*,

8   323 B.R. at 700-701. An additional factor to be considered in determining whether to grant

9   retroactive relief, is whether the court would have granted relief from the automatic stay if the

10  creditor had sought relief prior to acting. *National Envtl. Waste Corp.*, 129 F.3d at 1056; *Mataya*

11  *v. Kissinger (In re Kissinger)*, 72 F.3d 107, 109 (9th Cir. 1995). Also, debtor's use of the

12  mechanism of the automatic stay in bankruptcy to simply block a foreclosure is grounds for

13  retroactive annulment of the stay. *Burcena*, 2007 U.S. Dist LEXIS 734998 *29.

14      Applying the factors relevant to the question of whether relief from the automatic stay

15  should be granted retroactively, and balancing the equities in this case, compels the Court to grant

16  Mr. Azad's motion for retroactive relief from the automatic stay.

17      There are currently two bankruptcy petitions pending, one filed after the other, each aimed

18  at prohibiting an action to regain possession of the Property. The second was filed less than a

19  month after the Court granted relief from the automatic stay requested by Ms. Watson. While

20  there have not been an objectively large number of bankruptcy filings, the fact that they were filed

21  within months of each other and only one month after relief from stay was granted shows an

22  intention to abuse the process. The number and circumstances of the filings indicate an intention

23  to delay and hinder creditors. In addition, retroactive in rem relief would preclude the possibility

24  that additional bankruptcies will be filed by those affiliated with debtor.

25      As soon as Mr. Azad received notice that debtor was claiming to have a protected interest

26  in the Property, he stopped pursuing the Unlawful Detainer and sought counsel to bring this

27  motion.

28

4828-3828-4324, v. 1                                              12

1    Debtor has thus far flaunted the bankruptcy process. Her initial filings were skeletal and it

2    was impossible to determine that debtor was claiming any interest in the Property. Debtor's

3    disregard for the bankruptcy rules was the direct cause of the current need for retroactive relief.

4    At this time, there would be little difficulty or cost to restore the status quo. No action has

5    been taken in the Unlawful Detainer except filing a complaint. If retroactive relief is granted, the

6    Unlawful Detainer could proceed and Mr. Azad can regain possession of his property. This result

7    is no prejudice to the debtor because she had no interest in the property to begin with.

8    Mr. Azad respectfully requests that relief from the automatic stay be granted retroactive to

9    February 27, 2015.

10   **IV.    CONCLUSION**

11   Mr. Azad respectfully requests a declaration that the automatic stay does not apply to the

12   unlawful detainer action proceeding in the Superior Court of California, County of San Mateo,

13   Case No. CLJ211042 or, in the alternative, that the court annul the stay to allow Mr. Azad to

14   pursue his state law remedies, as discussed above.

15

16   Dated:  June 15, 2015                                    TERRA LAW LLP

17

18

19                                          By: /s/ James A. McDaniel
                                                James A. McDaniel
20                                              Attorneys for Creditor Mahmood Azad

21

22

23

24

25

26

27

28

4828-3828-4324, v. 1                                13